IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:15cr80 |
| | ) | |
| QUANTAVIUS DURHAM, | ) | |
| | ) | |
| Defendant. | ) | |

FILED IN OPEN COURT
MAR 1 4 2016
CLERK U.S. DISTRICT COURT
Newport News

## STATEMENT OF FACTS

If this case had proceeded to trial, the government would have been able to prove the following facts beyond a reasonable doubt:

1. The defendants, RAIQUAN LAMONT TURNER, a/k/a "Ray Ray," a/k/a "Ray," and RAQUILLE MONEE JACKSON, a/k/a "Raq," and others, were members and associates of a neighborhood gang that was known alternatively as "the 36th Street Bang Squad," "36," "Three-Six," and "the 800" (hereinafter "36th Street Bang Squad"). This was a criminal organization whose members and associates engaged in acts of violence, including murder, threat of murder, attempted murder, robbery, witness intimidation and narcotics distribution. 36th Street Bang Squad operated principally in a geographic area in the southern portion of Newport News from Wickham to Madison Avenues, between 35th and 36th Streets. Its territory also covered the area around 28th Street and Roanoke Avenue. Finally, the organization claimed 35th Street as it extended into Hampton, changing to Shell Road. 36th Street Bang Squad had an alliance with members of a local Newport News street gang, Blick'Em Boys. Both QUANTAVIUS

DURHAM, a/k/a "QUAN, and ERIC DWAIN EDMUNDS, II, a/k/a "E," a/k/a "EE," were members of Blick'Em Boys and associates/allies of the 36th Street Bang Squad. Both 36th Street Bang Squad and the Blick'Em Boys were rivals of Walker Village Murder Gang, another local street gang.

2. 36th Street Bang Squad, including its members and associates, constituted an "Enterprise" as defined by Title 18, United States Code, Section 1959(b)(2) (hereinafter "the Enterprise"), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate commerce. This enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. The above-described Enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving attempted murder and robbery in violation of Virginia State law, and drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

4. According to a founder of the 36th Street Bang Squad, members and associates of 36th Street Bang Squad enjoyed protection of the gang throughout its territory. Whenever a member of the enterprise had an issue with a rival gang member or outsider, other members were expected to assist in handling the issue, whether with intimidation, assaults, maimings or even murder. In order to gain status within the enterprise, members committed crimes which would

increase the reputation of 36th Street; however, the crimes were such that other gang members had proof that it was done by and for the enterprise. If a member or associate refused to participate in the enterprise's activities, he would be cut off from the gang, would lose any protections or benefits, and could even be victimized by the gang through forms of violence.

5. On June 5, 2015, DURHAM and EDMUNDS learned that Kevonne Turner, a member of 36th Street Bang Squad, had reportedly been murdered two days prior by J.S., a/k/a "D'Rose." J.S. was affiliated with the rival Walker Village Murder Gang. DURHAM and EDMUNDS, along with 36th Street Bang Squad member RAQUILLE JACKSON, left EDMUNDS' home and went to Bridgeport Academy on Briarfield Road to look for J.S. At the high school, DURHAM, EDMUNDS and JACKSON were joined by other members of 36th Street Bang Squad, including RAIQUAN TURNER. Upon the direction of TURNER, the group, along with other gang members, followed a Hampton City public school bus from the high school to the Derby Run Apartments on Floyd Thompson Boulevard in Hampton.

6. J.S., aware that he was being followed by 36th Street Bang Squad members, and two other juveniles exited the school bus and ran into the Derby Run apartment complex. The men, divided into two cars, stopped at the Sonic restaurant beside the apartment complex entrance. At that time, DURHAM provided his loaded Kel-Tec 9mm handgun to EDMUNDS. EDMUNDS, JACKSON, TURNER and other 36th Street members walked into Derby Run attempting to find J.S. EDMUNDS, JACKSON and TURNER each carried a loaded firearm on his person as they

3

looked for J.S. Unable to locate J.S., EDMUNDS, JACKSON and TURNER returned to the Sonic where DURHAM awaited them at the vehicle.

7. At approximately, 3:40 p.m., JACKSON, DURHAM, EDMUNDS and TURNER got back into the vehicle. JACKSON and DURHAM were in the front seat, while EDMUNDS and TURNER were in the back. JACKSON drove the vehicle out of the Sonic parking lot and again passed the front of the Derby Run complex. JACKSON made a u-turn and came back around. At that time, TURNER observed two members of the Walker Village Murder Gang walking towards the Sonic on Floyd Thompson Boulevard, and drew the others' attention to them. JACKSON stopped the vehicle on the four lane road and held his Ruger 9mm handgun with an extended clip outside the vehicle. At that time, he did not have a clear shot at the two rival gang members. As a result, JACKSON pulled the firearm into the vehicle and called them over to the car. As soon as the two men began to walk towards the vehicle, JACKSON opened fire. EDMUNDS, sitting behind JACKSON, also began shooting. The two targets immediately ran for cover.

8. JACKSON drove the vehicle from the location. Witnesses at the Sonic Restaurant provided police a clear description of the vehicle and its direction of travel. Within approximately two miles of the Sonic, only minutes after the shooting, Hampton Police officers intercepted the vehicle. The vehicle finally stopped on an exit to I-264. Officers recovered the Ruger 9mm on the dashboard in front of JACKSON. The extended clip was on the driver's

floorboard at his feet. A Kel-Tec 9mm and a Smith & Wesson .38 revolver were recovered in the passenger side floorboard at DURHAM's feet. All four defendants were tested for the presence of primer residue. Analysis of the primer residue kits completed by the Department of Forensic Science in Norfolk, Virginia, showed that all four defendants were positive for primer residue on their hands.

9. Casings from the scene of the shooting on Floyd Thompson Boulevard were recovered and analyzed by the Department of Forensic Science. It was determined that thirteen (13) cartridge cases recovered from the scene matched the Ruger 9 mm pistol, used by JACKSON. Additionally, four (4) cartridge cases from the scene matched the Kel-Tec 9mm pistol, used by EDMUNDS, which had been provided to him by DURHAM.

10. All four defendants were arrested. DURHAM was Mirandized, waived his rights and and made a statement to law enforcement officers. Among other statements, DURHAM admitted that he and EDMUNDS were members of the Blick'Em Boys, and that the 36th Street Bang Squad had an alliance with the Blick'Em Boys. DURHAM admitted that he gave EDMUNDS the Kel-Tec 9mm pistol that EDMUNDS used when he, TURNER, JACKSON and other gang members searched for Smith in Derby Run apartments and that EDMUNDS subsequently used in the shooting that followed. DURHAM admitted to police that they were going to kill J.S. because he was part of Walker Village Murder gang and had disrespected 36th Street by posting pictures of their dead members and then killing Kevonne Turner on June 3, 2015.

5

11. According to DURHAM, several Walker Village members had disrespected "3-6." DURHAM stated on jail calls that JACKSON committed the shooting because he "wanted to get his f**king bang out so f**king bad." JACKSON, a member of 36th Street Bang Squad, completed the shooting in front of long-time member TURNER to gain rank in the enterprise.

12. The acts of the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offenses charged in this case.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Howard Zlotnick
Managing Assistant United States Attorney

By: _____
Amy E. Cross
Special Assistant United States Attorney

Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Quantavius Durham
Defendant


Defense Counsel's Signature: I am the Defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Lawrence Woodward, Esquire
Attorney for the Defendant